E. L. WARNER, Respondent, v. J. R. PENCE and R. W. PENCE, individually, and J. R. PENCE and R. W. PENCE, co-partners as Pence & Pence, Appellants.

(188·N. W. 167.)

**Physicians and surgeons — evidence held to prove stiff elbow joint the result of physician's negligence.**

1. In an action to recover damages alleged to have resulted from negligence in the treatment of an injured arm, the plaintiff had judgment.

The evidence is examined and *held* to be sufficient to support the verdict.

**Physicians and surgeons — $5,000 verdict for stiff elbow joint held not so excessive as to indicate passion or prejudice.**

2. Where the injury resulting to the plaintiff is that of a stiff elbow joint which will be permanently rigid unless relieved by an operation, requiring the removal of a portion of a bone, and the expenditure of from four to eight months' time for treatment and of approximately $600.00 for professional services, after which the arm may be considerably weakened permanently, it is *held* that a verdict for ·$5000.00 is not so excessive as to indicate passion or prejudice on the part of the jury.

Appeal from District court, Ward county, *Moellring,* J.

Affirmed.

*Lewis & Bach,* for appellants.

*W. H. Sibbald, E. R. Sinkler,* and *Greenleaf & Wooledge,* for respondent.

BIRDZELL, J. Action to recover damages alleged to have resulted from negligence in the treatment of the plaintiff's injured arm. This is an appeal from a judgment for the plaintiff for $5,091.60, and from an order denying a motion for a new trial. The facts necessary to be stated are as follows:

On the 11th of May, 1920, the plaintiff was kicked on his left arm by a horse. He resided in the country a distance of several miles from Minot, to which place he went for treatment on the same day and soon after the injury was sustained. He consulted the defendant, Dr. J. R. Pence, a physician and surgeon residing in the city of Minot. The

doctor bared the arm and gave it both a manual and fluoroscopic examination with the aid of an X-ray apparatus. The ulna was discovered to have been broken several inches below the elbow; the break being diagonal in shape with the ends left somewhat jagged. The bone was entirely severed, and the ends were not in contact, but overlapped to some extent. On account of the swelling, it was deemed not advisable to reduce the fracture that day, so the arm was placed in a sling and other first aid treatment given. Later attempts were made by both defendants to reduce the fracture by setting the broken parts in position by manipulation. At these times both the manual and fluoroscopic examinations were made. These attempts proving unsuccessful, the plaintiff was taken to the hospital on May 20th, where an operation was performed by the defendants, assisted by Dr. Kermott. The operation consisted of an incision separating the tissues of the forearm to the broken bone, placing the broken bone in shape, and fastening it with silver wire. The arm was put in a plaster cast which was occasionally removed thereafter to permit the proper dressing of the wound, and, as the doctors testify, for the purpose of exercising the arm so that it would not become stiff. About five weeks after the operation the cast was permanently removed. The elbow joint was stiff, and about July 1st the plaintiff went to one Wood, a chiropractor, for treatment. On July 16th he went to work on the section, cutting weeds with a hoe and shovel. He worked here less than two weeks. In September, 1920, he went to another physician for treatment. Then and at the time of the trial the elbow joint was practically rigid, and the damages claimed in this action are predicated on alleged negligence in the treatment, which, it is claimed, resulted in the stiff joint. The testimony is voluminous and conflicting in a number of respects. It need not be stated except in so far as necessary in the proper consideration of the questions presented upon appeal.

It is contended that the evidence is insufficient to support the verdict. This contention is based largely upon what the appellants claim is a clear inconsistency between certain evidence of a highly probative character and certain other evidence of lesser value. It is asserted by the plaintiff and witnesses who testify in his behalf that at the time he consulted the physicians originally there was a large lump on his arm in such a position as to indicate that the elbow joint was injured. There is likewise evidence interpreting certain X-ray plates or pictures which were made soon after the injury to the effect that a break near the lower end of the humerus or the arm bone is indicated. There is also an X-ray picture

taken in September which clearly shows a marked dislocation of the radius at the elbow joint. The appellants contend that the pictures taken soon after the injury show no injury to the elbow joint and no dislocation, that the plates do not sufficiently show the lower end of the humerus to determine the existence of a fracture there, but that they do show the elbow joint plainly enough to indicate that the bones are in place. There is also testimony by the defendants to the effect that the X-ray picture taken in September shows that the ulna has been rebroken at the point of the original break. The fluoroscopic examinations are likewise minutely described so as to demonstrate the impossibility of such an examination having been made without discovery of an injury or dislocation at the joint, if such existed. From the apparently irreconcilable discrepancies between the condition disclosed by the early plates and that disclosed by later ones, together with the undisputed evidence concerning the character of the fluoroscopic examinations, it is argued that a conclusive showing is made that the present condition of the plaintiff's arm is due to some injury sustained subsequent to the treatment given by the defendants, or to the plaintiff's failure to follow the defendants' directions for restoring motion in the joint and in doing work beyond the capacity of the weakened member to withstand.

There is considerable evidence in the record tending circumstantially to establish the existence of a dislocation at the elbow at the time the plaintiff originally consulted the physicians. And the strongly contrary showing afforded by the X-ray pictures, taken soon after the injury was sustained, is somewhat weakened by the explanations or interpretations of them. These demonstrate that the apparently conclusive effect of the pictures is more or less deceptive, owing to the different effects produced by taking such pictures from different angles. In addition to this, the fact that the plaintiff's elbow was stiff when the plaster cast was permanently removed tends to support the contention that an injury to the elbow had remained without proper treatment until that time. We think this statement warranted, though a normal elbow joint might become stiffened by being kept in a cast for a period. The testimony is conflicting as to whether or not the joint had been flexed at intervals following the operation. If it had been property flexed at intervals, it is improbable that it would have become as rigid as it was at the time the cast was permanently removed. It is certain that the dislocation existed in September; and, while the defendants undertake to account for it on the theory of a fresh injury, the plaintiff's testimony, for which we find con-

siderable circumstantial corroboration in the record, is that no such subsequent injury was sustained. We think the record likewise negatives, by substantial evidence, the contention advanced by the defendants that the stiffening was due to the plaintiffs' neglect or to the failure to follow directions given by the defendants. We are satisfied that the verdict is amply supported by the evidence.

The appellant argues that the verdict is so excessive as to indicate that the jury was actuated by passion and prejudice. The evidence shows that the injury is permanent in character; that the plaintiff had, up to the time of the trial, been subject to considerable expense on account of the physical impairment resulting; that he will not be able to continue efficiently to perform the character of physical labor which he had been accustomed to performing; that in order to repair his injury as best he can it will be necessary for him to submit to an operation for the removal of a portion of the bone at the elbow joint, at a cost of approximately $600, and which will require for treatment a period of approximately four to eight months' time, after which his arm will continue to be considerably weakened permanently. In view of these circumstances we think the verdict is not so large as to indicate passion or prejudice on the part of the jury. The order denying the motion for a new trial and the judgment appealed from are affirmed.

GRACE, C. J, and BRONSON, CHRISTIANSON, and ROBINSON, JJ., concur.